Good morning, Your Honors, and may it please the Court. Sania Evangelos, on behalf of plaintiffs, I'd like to reserve five minutes for rebuttal. All right, Counsel, please be reminded that the time showing is your total time remaining. Thank you, Your Honor. The Court should reverse the District Court's decision because California's AB 5 irrationally rolls back Dynamics' worker protections for similarly-situated occupations while subjecting plaintiffs to a higher standard in violation of Equal Protection, Due Process, and the Contracts Clause. And the District Court committed legal error in ruling that plaintiffs were unlikely to succeed in their constitutional challenge. Let me start by responding to the Court's question, whether this appeal is still a live controversy in light of Proposition 22. It absolutely is. First, Proposition 22 has not taken effect yet. It will very soon. But several government actors, including Defendant Attorney General Becerra, continue to attempt to enforce AB 5, both for monetary relief during the period before Proposition 22 and even for forward-looking injunctive relief. Counsel, are you saying that the Attorney General is going to try to enforce it once the Proposition 22 has been certified and it becomes law at some point? That's what they're telling us, Your Honor. Actually, it baffles the mind. But hold on, because you just said that the Attorney General has been trying to and has tried to enforce AB 5. That's correct. That's not the same as Prop 22, which has been passed by the voters overwhelmingly. And assuming that it becomes the law in California, do you believe that the Attorney General is still going to try to go against what is now the law in California, or will he back off? And I'm curious as to what you think about this, because depending on what happens, you're with an opinion that might contradict, we don't know where it's going to go now, but might contradict what Proposition 22 is saying. No, actually, Your Honor, we're asking for a ruling from this court that's consistent with Proposition 22. We believe that AB 5... But what if that doesn't happen, then, is what I'm saying. I'm trying to see where, why this is alive right at this point. Well, thank you, Your Honor. As I stand here today, I am, the AG is continuing to press forward. In defiance of the will of the people. So Your Honor's question is a very good one, and I can't for the life of me understand why, but just yesterday in a filing before the California Court of Appeal, the Attorney General took the position that it's not backing off of the injunction, and that the injunction that they obtained in the state courts should remain in effect, and that they're continuing to seek that injunctive relief. So I think it is really shocking, but as I stand here today, they have shown no signs of backing off of this enforcement action, so this remains a live controversy before this court. And also, just three days after Proposition 22 passed, the California Division of Labor Standards Enforcement, another state agency, filed a complaint seeking an injunction under AB 5 against plaintiff Hoover. So this is going on, the San Francisco District Attorney refused to withdraw a request for a preliminary injunction against another network company, DoorDash, just a couple days after Prop 22 passed. So the state is continuing to seek the very relief that we said we were filing this lawsuit to present. We still very much need relief from this court, and I'd like to point the court to this court's decision in Metro PCS of California versus Picker. And the site for that is 970 F3rd at 1116. It's from this year. And the court there said, and this is black letter law, that quote, a case challenging expired legislation remains justiciable when the litigant still needs the judicial protection that it sought because of the government's intent to pursue enforcement. So here we really, I hope you'll ask Mr. Zolotan Zepeda whether the Attorney General is going to rock this attempt to force Uber and other companies to treat drivers and couriers in the gig economy as employees under AB 5 in light of Proposition 22. We think he absolutely should. And again, the Attorney General is defying the will of the people if he doesn't. But as I stand here today, that's what we're faced with. And so I do want to address, because this hasn't been brief, I just want to just mention that if the court were to find that our appeal is moot, of course, the case is not moot. The Attorney General is also seeking retrospective monetary relief, and this court's decision in Jacobus versus Alaska is directly on point. But more importantly, if the court finds that somehow the appeal is moot, then the proper result would be to vacate the district court's decision denying our request for a preliminary injunction. And the case for that proposition is Chemical Producers versus Helicor. And the site is 463 F3rd 871. And I'm providing that because the court asked us to address this issue. But I would like to turn to the matter of whether or not we vacate the district court decision is a separate issue from determining whether or not the case still remains a live controversy. Well, Your Honor, the case is absolutely a live controversy. I don't think there's any dispute about that. If the appeal is moot, though, this court must vacate the district court's order under the Supreme Court's decision in Munsingware and also the Chemical Producers case that I cited. So we've had a lot of disagreements in this court about whether or not to vacate a decision once an appeal has been dismissed for mootness. So I'm not sure that's a foregone conclusion. That's all I'm saying is I'm not sure if we determine this case is moot, but it's a foregone conclusion that we vacate the district court decision. Sometimes we send it back to the district court to make the determination whether or not the decision should be vacated. Well, Your Honor, we'd be happy to provide briefing on that issue because it hasn't been briefed if the court would like it. But I believe that this is absolutely a live controversy. And so I'd like to turn to the merits here, because this is truly a blatant equal protection violation. AB5's stated purpose was to replace the Borrello standard in California with the Supreme Court's standard, the ABC test that was adopted in Dynamics. And the reason the stated purpose of AB5, the reason for doing that was that the legislature claimed it believed that Borrello didn't sufficiently protect workers and resulted in misclassification. And that's on the face of the statute. And the attorney general in his brief agrees to that. There's no dispute. That's the articulated purpose. But AB5 does not advance that end. First, AB5, as I just mentioned, didn't introduce the ABC test into California. The California Supreme Court did. And after the Dynamics decision, it applied to everyone across the board to wage order claims. The legislature, by enacting AB5, actually reversed Dynamics for millions of workers in California in over 100 categories that it gave out exemptions to. So, again, this is really the critical piece of our argument and what the district court got wrong and what the government just doesn't grapple with here. The wage order claims for those occupations that were subject to Dynamics before AB5 uniformly across the board are now going to be analyzed under Borrello, which is the very standard that the legislature and the state now claimed led to harm to workers and misclassification. So actually, as our amici have echoed, our many amici have also amplified that this actually shifts California law in opposite and contradictory directions. And so this has all of the ingredients of an equal protection violation. This court's decision in Merrifield versus Lockyer is exactly on point there. This court said that the government couldn't undercut its own articulated rational basis for a licensing scheme by excluding similarly situated parties from an exemptions scope. That's exactly on point here. And this court and the U.S. Supreme Court and other circuits have not hesitated to call out laws like this that are just irrational and arbitrary. So the government here, their main argument is that rational basis review allows the state to regulate incrementally. I want to make very clear that's not what AB5 does. So AB5 didn't leave the law as it stood for the exempted occupations and industries. It actually took the affirmative step of rolling back the dynamics standard and reinstating Borrello. So if we are to take the government's word for it, that Borrello harms workers, then AB5 affirmatively harms a huge section of the workforce. Millions of workers. I think the government has put that number at over a thousand workers in California, and it did so in order to target unconstitutionally and irrationally our clients. But the court doesn't even need to get there because the classification on its face is so arbitrary. So I'd like to give what I think is the best example of this arbitrariness and that just illustrates and exacerbates AB5's unequal treatment of the on-demand delivery and transportation industry. So one of AB5's exemptions is for referral agencies. And of course, Uber and Postmates are very clearly referral agencies. They're platforms that refer workers, customers who either want a ride or a delivery. And the district court here actually suggested that we might fit within the referral agency exemption because we connect providers of errands with customers. And AB5 at the time applied the referral agency exemption to those who provide errands. But then 2257 expanded the referral agency exemption to any type of work. And it could not have been more blatant. It expands it to all referrals for services, but specifically carves out and excludes referrals for delivery, courier, or transportation services. There is absolutely no rational basis for treating Postmates and Uber differently from referral agency apps like WAG, which some have called the Uber of dog walking, and Handy and TaskRabbit. These are all apps that provide platforms that connect users the way Uber and Postmates does. So there's no basis for that. And by the way, the legislature didn't articulate any basis for the changes to the referral agency exemption. So that's completely irrational. And we believe that there's no way that it could satisfy rational basis review here. And I also just want to point to the fact that this court has to examine the means between the fit and the ends here. And if it does, it will see that the only explanation for the rollback of Dynamics is that it was to benefit favored interest groups and harm network companies like Plaintiffs and like Ms. Olson and Mr. Perez, who use those apps to work. And the California Labor Federation here, and this is in the record, circulated a one page form letting favored interest groups ask for exemptions. The public record here could not be clearer that the sponsors have had Uber, Postmates and others in their crosshairs all along. And this is really irrational targeting. So the targeting is very clear here. And actually, the California Court of Appeal in the case brought by the attorney general against Uber agreed with that and actually used that against us in that case. So, Your Honor, that's why we came to this court in the first place, seeking a ruling from the federal court that AB5 is unconstitutional. And here, the harm that's going on continues despite the enactment of Proposition 22. The sponsor of AB5 is still going on Twitter and attacking Uber, threatening and using profanity and all sorts of just really reprehensible language. So this is a terrible, terrible law. It's irrational. And it doesn't have any basis for the distinctions that it draws between similarly situated industries and occupations. And some of those who are exempted here are house cleaners and janitors. It's not just doctors and lawyers. It's a whole host of workers who really don't bear any traditional connection to the notion of an independent contractor, certainly not any more than the drivers and couriers that have for years been using these apps as independent workers and creating their own businesses. So I would like to address the irreparable harm that the government's effort to continue this attack on Uber and Postmates and the plaintiffs here is causing. And it does need to be stopped. Judge England, to your question, in Proposition 22, the people declared that the public interest is in both protecting the ability of Californians to work as independent contractors and to work with multiple platforms. That's beneficial. They said that preserving access is beneficial to consumers, small businesses and the California economy. And overwhelmingly, drivers supported Proposition 22 by a four to one margin. So there is no interest in the state's continued enforcement of this law, especially in light of the fact that the voters have spoken here and they have repudiated AB5, yet the attempt to seek an injunction continues. And the harm to drivers, to Uber, to Postmates and to the public could not be greater in the midst of this pandemic. And it would destroy significant public benefits. And we are still being subjected to this, Your Honor. In the AG's filing yesterday, he refused to back off of the injunction. So this is a very real controversy. And I do want to leave some time for rebuttal. So I can stop here unless the court has any questions it would like me to address right now. It appears not. Thank you, counsel. Thank you. Counsel for the state. Good morning, Your Honor. May it please the court, Jose Zoledon Cepeda for Defendant Attorney General Javier Becerra. This case concerns Assembly Bill 5, a wide ranging law that the legislature determined was necessary in order to address misclassification problems and the erosion of the middle class. AB 5 applies to all working arrangements except the specifically exempted. And therefore, the district court correctly determined that plaintiffs failed to show serious legal questions and therefore not entitled to a preliminary injunction based on their equal protection, due process or contract clause claims. I wanted to go ahead and address the mootness aspect of the case first. Before this court can reach the merits, there's an important issue of mootness, as counsel alluded to and Judge England pointed out in the recent election, the California voters approved Proposition 22, which essentially carves out certain types of ad-based drivers or certain types of ad-based businesses from the ABC test. Under California law, Proposition 22 will become effective in the middle of December. Our position is that as at the time that Proposition 22 goes back under state law, the plaintiff's claim for prospective injunctive relief in this case is moot because the law will be, absent a challenge, Proposition 22 will be the law and the plaintiffs will not be subject to the ABC test under AB 5. The court cannot fashion any relief that they sought in the preliminary injunction, namely prospective requests to enjoin application of AB 5 to them. A separate question that plaintiff's counsel alluded to, but did not really make a separate enforcement action that has been pending in state court by certain counties, as well as the state, against certain companies, including Uber and Lyft. That action is not coextensive with the claims here. It involves claims both under AB 5, as well as the Dynamics case. Thus, to the extent that those cases involve claims that are not an issue here, the Proposition 22 would not affect those particular claims. Counsel? Yes, Your Honor. Is it the position of the Attorney General that until the new statute takes effect, that it will continue to enforce AB 5? Our position, Your Honor, is that the Attorney General will continue to enforce the law and the law, obviously, in the middle. Once Prop 22 goes into effect, it will be the law, absent some particular challenge. That wasn't my question, though. My question was, is it the Attorney General's position that until Prop 22 takes effect, that it will continue on with the enforcement of AB 5? Our position is that we will continue to the extent that that is the law. We'll go ahead and continue that. If the court is referring, Your Honor, and I'm not trying to avoid your question, if the court is referring to the enforcement action in the state, our position is that to the extent that Prop 22 becomes a law in December, then any attempt to enforce it after December 16th would not be proper. But to the extent there are retroactive claims for back pay from the time that AB 5 went into effect, which was January 1st of 2020, or to the extent that the enforcement action involves claims under the dynamics decision, which are not impacted by this action, that those claims remain live even after Proposition 22, because those are not impacted. Those are not based solely on AB 5. They're based on pre-existing law, if that answers your question. So would you agree, then, with opposing counsel that at least as far as those claims are concerned, this appeal is not new? Our position, Your Honor, is that those cases claims are not implicated by this particular request for injunctive relief. And the reason is what plaintiffs sought was prospective injunctive relief as to AB 5. And once AB 5 goes into effect, then, pardon, once Prop 22 goes into effect, then AB 5 will no longer be the law to the companies that are covered by Proposition 22. So between now, and I wanted to point the court's attention to a recent case by this court called California v. Cesar, that's 9-11-F-3-558. It's a 2018 decision, which we think is actually quite analogous. In that particular situation, the state challenged an interim rule by the Health and Human Services, and this court concluded, but the interim rule was set to be superseded by a final rule in a month after this court decided the case. And this court concluded the case is not moot because the interim rule is still in effect from now until the permanent rule goes into effect. So during that period of time, the court can go ahead and decide that aspect of the case. But after the final rule goes into effect, superseding the final rule, then the court, pardon, when the final rule went into effect, superseding the interim rule, then the claims regarding the interim rule were no longer viable. They were moot. It's similar in this situation. If this case were being argued or decided on December 16th, when Prop 22 goes into effect, then plaintiff's claim for prospective relief from the enjoyment of seeking to enjoin application of AB 5 to them would be moot. But if there are separate claims in the action, which there are under the unfair competition law, under dynamics and potentially under Borrello, those claims are not implicated in this action. So to that extent, the claims are not coextensive. So are you saying that the actions that are being pursued against opposing counsel's clients are not based on AB 5? Are not solely based on AB 5, Your Honor. Parts of them are. And to the extent that they are, we agree that Proposition 22 would, after Prop 22 goes into effect, those claims would no longer be viable. But to the extent, because that action involves other claims other than claims under AB 5, then this court can, those claims are not implicated in this case because the plaintiff's raised a claim for preliminary injunctive relief solely as to AB 5's enforcement. Counsel, I'm going to ask you a question very quickly, and I just want to put a little bit of context on it, as your opposing counsel indicated early on, you're, the state and the attorney general are still apparently pursuing actions against various entities right now. So is it your position that not looking at, you know, retroactive claims, but the starting tomorrow until December 15th? Does that make sense? I'm trying to ask you. I get, if I understand your question, Your Honor, our position is that, that until Prop 22 goes into effect, there could be potential enforcement actions. I'm unaware that there are any intended further enforcement actions up to December 6th, up to December 15th. So then what you're saying is you're not, you're not aware, but you're saying then that it is very possible, I won't say probable, but very possible that there would be further enforcement actions, even though, as we've said here several times that people have spoken and what you're saying is you're not going to be pursuing it, but it's very possible the state or the attorney general may be pursuing claims against individuals through, or companies through December 15th. I think it's important to, to, to put a finer point on that, Your Honor. If, if the court is, if Your Honor is referring to actions for back pay up until Prop 22 goes into effect, we'd submit to the court that those, those would be proper actions because what you're trying to get is benefits that particular workers were entitled to before Prop 22 goes into effect. I'm not aware of any on behalf of, on the part of the state. Planning Council was referring to counties and obviously we cannot control the counties, but our position is if the act, for example, if there are actions for back pay before Prop 22 goes into effect, that those would not be implicated. I'm not aware of any, but after December 16th, when the law goes, when Prop 22 goes into effect, then it, any, any action for future enforcement under Prop, under 85 against covered entities would not be supported by the law. If, if there are any more questions regarding the mutants aspect of the case, I'd be happy to address them. Otherwise I'd like to address the equal protection claim raised by the plaintiffs here, as the district court correctly concluded, plaintiffs failed to show serious legal questions regarding the equal protection claim. Plaintiffs' counsel does not dispute that rational basis applies here. Under rational basis review, as the district court correctly concluded, correctly recognized, plaintiffs bore the burden to negative every conceivable basis for the law and any plausible policy reason for the classification would survive under rational basis. Rational basis is not a basis. It is not a way to question the pop, the wisdom or policy decisions of the legislature. What plaintiff was point, plaintiffs' counsel was pointing to raising challenges regarding the rationality or whether the law met its purpose. That really goes to the effectiveness to the policy decisions and under rational basis review courts defer to the state legislatures in making these types of determinations. Plaintiffs focused on the case of Merrifield versus Lockyer. That case, as this court has subsequently pointed out, is an unusual situation where there was, where the particular goal of the law was contradicted by the attempts to, through which the legislature sought to remedy those. This court earlier this month actually discussed Merrifield and in a case brought by the San Francisco Taxi Coalition versus City and County of San Francisco, and that Merrifield versus Lockyer presents the outer boundary of what's improper legislation under rational basis. The court said that unless there's, there's any allegations or proof that there was basically fraud, some type of fraud regarding the legislation that there was no viable claim for an equal protection violation. Plaintiffs' counsel also addressed or raised the question of whether the particular exemptions that they focus on met the purpose of the statute. That is not the proper analysis under rational basis. Courts do not look at every single aspect of a statute and assess whether those particular aspects of the law meet the overall purpose of the statute. What the legislative history here demonstrates was that the legislature was concerned about misclassification and wage theft and erosion of the middle class in areas that are growth industries currently within the state. And therefore address those through a wide ranging and broad test that does not focus on any particular industry. AB5 applies to any work, any individual providing services or labor for remuneration. Now, the focus instead of a plaintiff's case is on the exemptions. What the legislative history demonstrates and the district court went through this legislative history is that the legislature was trying to figure out situations where this broad ABC test was not appropriate given the general characteristics of given pre-existing occupations that were deemed independent contractors even before the dynamics decision. Licensed professionals like attorneys, doctors, architects, those types of occupations were carved out from the ABC test. So those particular challenges lack merit because there was a reason plausible decision by the legislature for why the exemption would not apply to that. We submit to the court that it's perfectly proper for the legislature to decide that a particular industry presents a problem of misclassification and focus on the industries that have or present the biggest problems. It is I don't think anybody would dispute that the app based business industry generally is a big industry within the state of California. Therefore, given its findings that there was a misclassification problem within that industry, it would make no sense for the legislature to carve out that particular aspect to that particular industry from the ABC test. On the contrary, it makes sense to focus on industries that present the problem. So the legislature did not err. The legislature certainly had a plausible policy reason for determining that the ABC test should apply in that particular industry. Plaintiff's counsel also pointed to and the complaint also points to comments that were made in social media and the press by certain number of legislatures outside the legislative context. This court should focus on the legislative language and the legislative history. What effect does the statute actually have? The whatever views of the individual legislatures, the legislators that are quoted and do not are not the proper basis to focus on the analysis of whether the particular statute meets rational basis review. Counsel, are you suggesting that we ignore the statements of legislators? Our position, Your Honor, is that the plaintiff's counsel is putting before the record that this record consider them. But the analysis really focused on what this focuses on, what the statute does and what the legislative history shows. The comments of individual legislators would not, absent something about the statute itself, would not be a proper basis to find that the statute violates equal protection. But isn't that information we consider when determining whether or not a particular industry was unfairly targeted? It's certainly something that the court can consider in assessing whether an industry was improperly targeted. And in this case, that's not what the statute shows. That's basically our position. We're not saying that the court should turn a blind eye to anything else. What we're saying is the court can look at that and then look at the statute and see what the statute actually does. It can look at the legislative history and see what the legislature actually considered. By analogy, Your Honor, when the court undertakes a statutory interpretation of a It focuses on the official legislative history and it focuses on what the statute actually says. That's our position in this case, because if individual legislators had a particular view that they expressed, but the statute does not, in fact, have the particular improper effect or improper targeting that plaintiffs ascribe to it, then there is no equal protection claim. The statute easily passes a rational basis. OK, I have a follow up question about that. In Merrifield, it says that the courts are supposed to look at the legislative facts to see if those facts that the legislature is relying on are reasonably legitimate. So what what's the authority that you would rely on to say that legislative facts just means legislative history? Your Honor, we just go back to the case that I alluded to earlier in the statute for on the particular comments themselves. Then our point is that would not by itself state an equal protection violation. The court can consider them. But in context, given what the statute actually does and as the district court pointed to a study that under AB 5, some number like 64 percent of the working arrangements would be covered by the agency test. So the court would have to look not just at what a straight comment by a particular legislator said, but what exactly is the effect of the of the statute as it is written? What is the effect in order to figure out in order to assess whether there's an equal protection violation? What has this court pointed out in a subsequent decision that came out after Merrifield versus Lockyer, Gallinger, the fact also that a particular law might provide some exemptions. Here AB 5 provides a number of exemptions that plaintiffs allude to in their complaint, that the fact that it has particular exemptions, that the fact that it accommodates one interest group is not equivalent to intentionally harming another. This is the type of draw making, line drawing that legislatures are tasked with generally when they're passing legislation. Legislatures can go ahead and decide that they can focus on a particular aspect of the problem. And that does not present an equal protection violation as in some unusual situation, as in some sort of improper focus on a particular group like in Romer versus Evans or in a federal case where the federal statute, the legislative history demonstrated that Congress was trying to carve out so-called hippies from particular benefits. This does not present those types of concerns in this particular situation, given the breadth of the statute. I want to follow up on that a little bit. I mean, the exemption list is long and frankly, a little surprising. And it seems like the rationale that you're advancing in the briefing and today is that it was a judgment called by the legislature that the impact, the economic impact of the other sector has been so significant that, you know, addressing perceived economic harms to workers in that specific context is legitimate. The problem is, or what I'm wondering about is, in making that judgment, are you necessarily saying that that long list of other jobs that have been exempted don't have an economic impact on the California economy? No, Your Honor, that is not our position. Our position is that the legislation could decide that the problem that might be classification in those particular industries, if there is the same type of issue, it's not the same magnitude and therefore would not necessarily be the primary focus. This goes back to the ability of state legislatures to decide that it can take reform one step at a time and say, let's focus on the biggest problem here and then later on make amendments to the extent that that particular problem is not going to address. It's perfectly proper within the context of what legislatures do in enacting legislation. If the court would like, I'm almost out of time, if the court would like, I'd be happy to address either the contract cost claim or the due process claim. Are there any questions? Thank you, counsel. Thank you, Your Honor. Rebuttal. Thank you, Judge Rolison. I'd like to start with Judge Hunsaker's question because I think that's exactly the problem here. The legislature did not decide to move incrementally here. What they did was exempt millions of workers that would have been covered by the very test. They say this law was needed to codify. That just doesn't make any sense. So the legislative history identified industries with the highest misclassification rates as construction, janitorial, hospitality. Yet the legislature exempted workers in each of those categories, making them allegedly worse off according to their own rationale. And so the question is not if it's rational to treat house cleaners who are exempted from drivers who are not. It's whether if your goal is to protect workers, it's rational to roll back the test as to house cleaners, dog walkers, yard cleaners, and the list goes on. It's not just doctors. Let's pick up with the state's position here. Why can't they just do this incrementally? Why can't they say we think that this subset of workers has a bigger impact or we're really concerned about this part of the economy? And so we're going to start our regulatory efforts here and see where it goes. Why can't they do that? Your Honor, if they had a basis for it, they could in a hypothetical situation. That's not what they did here, though. They took a standard that applied to everyone and then they rolled it back. So they didn't say we're going to start now. Everyone here is under Borrello and we're going to start in California by introducing the ABC test, which is tougher to select industries that we think pose a concern and make a record of it. They didn't do that. That standard, the ABC test applied to everyone. What they did was roll it back. So that's what makes this case so stunning. And it really just doesn't hold together. And they exempted so many people that the exceptions swallow the rule here. And let's just look at 2257. There is no basis for that. That carved out transportation and delivery in the whole industry of referrals in transportation and delivery from the referral agency exemption. So if you're a referral agency, you can refer dog walkers and people who do tasks in your house and house cleaners. But you can't refer delivery and courier services. And so why is that? There's no basis for that. So that's what the statute actually does. Mr. Zoledon Zepeda said, look at what it does. Basis for that distinction. So the next point I just want to respond to is that the court absolutely can look at the evidence here. It should not blind itself to the targeting and the irrational scheme speaks for itself. But in the Fowler or the Fowler case, this court looked at at the legislative facts and it can do so here. And it's done that in the Gallinger case that Mr. Zepeda cited. And finally, I do want to address the mootness question because once again, I think the government is trying to have it both ways here. What they said is just not true. They absolutely are pursuing the injunction in the state proceedings brought by the attorney general and city attorneys against Uber and Lyft just yesterday in footnote four of their brief that they filed just yesterday. They said that the injunction that they received should remain in effect. And they even said that it's their position that Uber doesn't satisfy proposition twenty two. So if that's not a live controversy, I don't know what is. So today before us, I'm surprised Mr. Mr. Zoledon Zepeda is has said what he said, that they're not trying to pursue it because that's exactly not what we have before us in that record. But then he also said that they're still going after penalties and monetary relief for the period before proposition twenty two. Well, that's the Jacobus versus Alaska case. That's this court's decision. They are said that clearly the controversy is not moot. Also, the case that he cited, California versus Azar, said that an appeal wasn't moot because a law there had not yet gone into effect. So this this appeal in this case that we brought seeks an injunction to prevent the government from continuing to enforce this irrational, illogical, misguided and harmful statute against us. And to this day, they are continuing to do it. So we need the relief from this court. There absolutely is relief that this court can provide. And and I think it's telling that they're asking this court to not grant us an injunction, but they're telling the court of appeal to keep in effect their injunction despite proposition twenty two. And so I would ask that the court reverse the district court's decision and grant us the relief that is consistent with what the voters overwhelmingly supported in enforcement action and not only the one before the court of appeal, but also by the Department of Labor, labor standards and in other places. This is ongoing, harmful. And I thank the court for your time and for your very helpful questions. All right. Thank you, counsel. Are there any other questions from the panel? Thank you, counsel, for your helpful arguments. The case is argued is a decision by the court that completes our calendar for the morning. We are recessed until 930 a.m. tomorrow morning.
judges: Rawlinson, England, Hunsaker